Matthew H. Sloan (No. 018632)
E-mail: MHS@JHC.Law
**JENNINGS, HAUG & CUNNINGHAM, L.L.P.**
2800 North Central Avenue, Suite 1800
Phoenix, AZ 85004-1049
Telephone: 602-234-7800
Facsimile: 602-277-5595

Attorneys for Shawn Mulligan
and Elite Enterprise Services, LLC

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 7 Proceeding |
| JONATHAN DONALD KOOP, | Case No.: 2:18-bk-14089-MCW |
| Debtor. | |
| SHAWN MULLIGAN, ELITE ENTERPRISE SERVICES, LLC, a Delaware limited liability company, Plaintiffs, vs. JONATHAN DONALD KOOP, Defendant. | Adv. No.: **COMPLAINT UNDER 11 U.S.C. § 523 TO DETERMINE NON-DISCHARGEABILITY OF DEBT** |

Shawn Mulligan and Elite Enterprise Services, LLC (collectively, "Plaintiffs"), by and through their counsel undersigned, allege as follows:

## INTRODUCTION

1. In or about the spring of 2015, Jonathan Koop ("Koop" or "Debtor") embarked upon a knowing and intentional campaign to steal a business he had formed with his business partner, Shawn Mulligan ("Mulligan"), named Elite Enterprise Services, LLC ("Elite"). Koop literally misappropriated Elite's website and email addresses, its marketing materials, customers and vendors, used Elite's

contracts and forms, its proprietary business methods and even used Elite's financial information to raise money for his new venture. Koop chose a confusingly similar business name with a virtually identical "dba" to lure Elite's customers and vendors to unknowingly follow him to his new venture, which itself excluded Mulligan and Elite. Koop's knowing and intentional actions were undertaken to his direct benefit and to the financial ruination of Elite and Mulligan.

2. In the summer of 2015, Elite and Mulligan filed suit in the United States District Court for the District of Massachusetts (Civil Action 15-40072-TSH). During the litigation, Koop regularly ignored and violated court orders and was sanctioned twice by the District Court for his misconduct. In April, 2018, Koop was ordered to pay to Elite and Mulligan the sum of $26,225.50 for his sanctionable misconduct. After being sanctioned a second time, an additional fee petition in the amount of $44,066.50 was pending before the District Court at the time of Koop's bankruptcy filing.

3. Ultimately a multi-day jury trial was held in the District Court in September, 2018. After hearing the evidence and deliberating for hours, the jury unanimously found in favor of Elite and Mulligan and against Koop and awarded $290,000 in damages. Specifically, the jury found that Koop had breached his fiduciary duties owed to both Mulligan and Elite, that Koop had knowingly misappropriated Elite's trade secrets and confidential information, and that Koop had tortiously interfered in Elite's contractual and advantageous business relationships. The jury's verdict was based on the overwhelming documentary and testimonial evidence of knowing, reckless and intentional misconduct on Koop's part. All of these debts, including the attorney fees' and sanctions awards, should be deemed non-dischargeable debts under 11 U.S.C. § 523.

## PARTIES, JURISDICTION AND VENUE

4. Shawn Mulligan is an individual who resides in Waltham, Massachusetts.

5. Elite is a Delaware limited liability company with its principal office located at 6991 East Camelback Road, Suite D300, Scottsdale, Arizona 85251.

6. Jonathan Koop is an individual who resides at 4422 North 75th Street, Unit 6003, Scottsdale, Arizona 85251.

7. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 157(b)(2).

8. Venue is proper in the United States Bankruptcy Court for the District of Arizona pursuant to 28 U.S.C. § 1409(a). The Complaint is timely pursuant to Rule 4004, Federal Rules of Bankruptcy Procedure.

## ALLEGATIONS COMMON TO ALL COUNTS

9. In or about June 2010, Mulligan and Debtor formed Elite, an entity engaged in the business of the purchase of consumer debt from debt traders and the subsequent sale of that debt to commercial purchasers.

10. For Elite, Mulligan performed various IT and operational functions while Debtor focused on sales.

11. Essential to Elite's operation were the commercial relationships that it developed and maintained with sellers and purchasers of consumer debt.

12. In or around September, 2014, Debtor secretly formed an alliance with a third party, David Jeffress ("Jeffress"), to create a new entity, Icon Capital Holdings, LLC ("Icon").

///

///

///

13. Icon's business purpose was to broker litigious debtor leads. This means that Icon would find and identify individuals who were being pursued by debt collectors and introduce these debtors to lawyers who specialized in suing debt collectors.

14. Icon's business purpose was antithetical to Elite's business. Indeed, Icon's business purpose was to match debtors and lawyers together who would then sue Elite's customers: debt holders.

15. Recognizing that Icon's business purpose was at odds with Elite's business purpose, Debtor sought to conceal his involvement in Icon from Mulligan.

16. From Debtor's Elite email account, he wrote, "we [meaning himself and Jeffress] would like to go ahead an incorporate a Delaware LLC called Icon." He continued: "It is our recommendation to proceed setting up a single member LLC with David Jeffress as the sole owner/manager. My short term role will be friendly management advisement and a small capital investment to help him start up." Debtor's accountant noted that Debtor's investment in the company was to be "an informal loan to the company and that [Debtor] will have a handshake agreement with the LLC owner to be able to buy in at a later time."

17. Debtor shouldered all of the costs associated with establishing Icon. Debtor purchased a domain name for Icon. Debtor also prepared a list of debtor attorneys and law firms who could be approached by Icon to purchase names of debtors who could file suit. In addition, Debtor prepared a script to have Icon call center representatives call debtors and inform them that they may have claims against their debt collectors. All of these acts were undertaken by Debtor using Elite's business assets, including its computer server and from Elite's email accounts.

18. Debtor even misappropriated, after Elite business hours, lists of debtors from Elite's computer database so that these individuals could be contacted by Icon's call center representatives. Debtor wrote to Jeffress: "I will have 12k names pulled out late Wednesday night." Elite possessed this highly sensitive personal, debtor information pursuant to strict confidentiality agreements which prohibited the misuse of the data.

19. In November, 2014, Mulligan learned of Debtor's scheme. Mulligan wrote to Debtor: the "ongoing situation [involving his involvement with Icon] that could constitute an unthinkable compromise of our legal and ethical obligations." Mulligan immediately moved all of Elite's electronic files to a secure location so that they could not be misappropriated or misused by Debtor.

20. Mulligan also retained counsel and forwarded Debtor a cease and desist letter. Despite the cease and desist letter, Debtor continued working on the Icon project with Jeffress.

21. Starting in the March, 2015 time period, Debtor came to realize that Mulligan was unwilling to allow Debtor's unethical business practices associated with Icon to continue and Debtor took action to loot Elite of its assets by secretly forming a new entity owned solely by Debtor. The business purpose of this new entity was identical to Elite. Over several months, Debtor took action to loot all of Elite's valuable assets and transfer those assets to his new company.

22. Debtor began in mid-March, 2015 by contacting his lawyer to establish a new company with a name very similar to Elite Enterprise Services, LLC. Initially, Debtor wanted to name his new company, Elite Enterprise Capital, LLC. While remaining a 50% owner, a manager and a member of Elite Enterprise Services, LLC, and from his Elite Enterprise Services, LLC email address, Debtor directed his lawyer to form Elite Enterprise Capital, LLC.

23. Soon thereafter, Debtor began discussions with Elite Enterprise Services, LLC's largest customer about assisting Debtor in establishing this new competitive venture. Debtor also discussed, and ultimately obtained, a business loan from Elite's largest customer to assist him with launching the competitive venture.

24. Debtor learned from Elite Enterprise Services, LLC's largest customer that the business name "Elite Enterprise Capital, LLC" had been taken in a few states and thus a new business name would be needed. Debtor ultimately settled upon "Capital Enterprise Services, LLC" ("CES").

25. Debtor formed CES and became its sole owner and managing member.

26. As Debtor took action to launch CES, he approached others to assist in the financing and launching of the venture. To demonstrate the value of CES' proposed business, Debtor misappropriated Elite's confidential financial information and shared it with proposed CES investors and potential business partners. Stated more simply, Debtor took Elite's confidential financial information (and Elite's financial successes) and used it as a basis to suggest to potential CES investors that the investor should make a financial investment in CES (not Elite). Debtor made the solicitations from his Elite email address, while he was a 50% owner, manager and CEO of Elite.

27. Debtor next began contacting Elite's business suppliers, vendors, customers and suppliers. With regard to one particular business partner, Debtor wrote, again from his Elite email account, that "Elite Enterprise Services is going to be opening a new entity and I would like to discuss continuing to use your services." This statement was knowingly and intentionally false. Debtor knew at the time he was making these false statements that CES was not a company formed by Elite and he knew that CES was not associated with Elite. The statement and

other statements like it were misrepresentations designed to mislead business partners, customers, vendors and suppliers into believing they were still doing business with Elite when they were not.

28. Debtor also directed emails to be sent, again from Elite email accounts, to customers falsely stating that "Elite Enterprise Services, LLC has gone under a reorganization … we are now known as Capital Enterprise Services, LLC d/b/a Bankrupt Debt Acquisition." Of course, this statement was false and knowingly so. Elite had not gone under a reorganization and it was not now known as Capital Enterprise Services, LLC d/b/a Bankrupt Debt Acquisition. It reflected yet another series of knowing misrepresentations designed to trick Elite's customers, partners, vendors and suppliers into believing that CES and Elite were one and the same.

29. Debtor also chose a virtually identical "dba" to operate CES. Elite's trade name (or "dba") was "Bankrupt and Deceased Debt Acquisition." He chose to operate CES as "Bankrupt Debt Acquisition."

30. Debtor also took Elite's vendor contracts and had those contracts re-executed in CES' name. Indeed, CES executed the identical contracts which Elite had executed with its vendors. The sole change was the removal of the name "Elite" and the addition of CES as a party.

31. Debtor then took Elite's marketing materials and began using these materials as CES' marketing materials. Pages from Elite's marketing/power point presentation were literally lifted without change into CES' marketing materials. In connection with the marketing of CES, Debtor directed CES employees to represent that "all functions, services and solutions for Bankrupt Debt Acquisition remain intact." Again, all of these activities were undertaken from Elite email accounts, further perpetuating the false narrative that CES and Elite were the same.

32. By April, 2015, CES began buying debt from the same sources where Elite had purchased debt and CES began selling that debt to Elite's largest customer, the same customer who had helped Debtor for CES.

33. As a result of Debtor's actions, CES became a financial success and Elite was financially ruined.

34. In the summer of 2015, Elite and Mulligan commenced suit against Debtor in the United States District Court for the District of Massachusetts. The matter was assigned Civil Action No. 15-40072-TSH (hereinafter referred to as "the Civil Action").

35. The Civil Action was litigated for several years. The matter took longer to litigate than the typical case due to Debtor's refusal to meaningfully comply with his discovery obligations.

36. In February, 2018, having had enough of Debtor's gamesmanship, the District Court entered a sanction order against Debtor. The sanction order included an award of attorneys' fees in the amount of $26,225.50. Debtor failed and refused to pay the sanction award.

37. Undeterred by the District Court's sanction decision, Debtor continued to flout the court rules. A second sanction order issued against Debtor in August, 2018. Again, the District Court's order entitled Elite and Mulligan to an award of attorneys' fees. Elite and Mulligan submitted a $44,066.50 fee petition, which remained pending at the time of Debtor's bankruptcy filing.

38. A jury trial in the Civil Action was held in the summer of 2015. The jury trial continued for several days. On September 17, 2018, the jury rendered its unanimous verdict, finding against Debtor and in favor of Elite and Mulligan. In particular, the jury concluded that Debtor had breached his fiduciary duties owed to Elite and Mulligan, that Debtor had misappropriated Elite's trade secrets and

that Debtor had tortiously interfered with Elite's contractual and advantageous business relationships. The jury awarded $290,000 against Debtor and in favor of Mulligan and Elite. The jury's verdict remains unpaid.

## COUNT ONE

## (Violation of 11 U.S.C. § 523(a)(2)(A))

39. Plaintiffs incorporate herein by reference all of the allegations contained in this Complaint as though fully set forth herein.

40. Debtor obtained money or property from Mulligan and Elite based on his false pretenses, false representations, and actual fraud, all in violation of 11 U.S.C. § 523(a)(2)(A).

41. As a direct and proximate cause of Debtor's conduct, Mulligan and Elite have suffered damages in an amount not less than $290,000.00 with the exact amount to be proven at trial.

42. Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs incurred and expended herein together with interest accruing at the highest rate allowed by law.

WHEREFORE, Plaintiffs pray for judgment against Jonathan Koop, as follows:

A. That the Court decree that Debtor is indebted to Plaintiffs and that such indebtedness is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A);

B. For judgment in favor of Mulligan and Elite in the total sum of not less than Two Hundred Ninety Thousand and 00/100 Dollars ($290,000.00), together with interest and taxable costs;

C. That the Court award Mulligan and Elite their reasonable attorneys' fees and costs; and

D. For such other and further relief as this Court deems just and proper.

## COUNT TWO

### (Violation of 11 U.S.C. § 523(a)(4))

43. Plaintiffs incorporate herein by reference all of the allegations contained in this Complaint as though fully set forth herein.

44. Debtor is indebted to Mulligan and Elite based on his fraud and/or defalcation upon them and their property while acting in a fiduciary capacity to Mulligan and Elite as well as embezzlement and/or larceny, all in violation of 11 U.S.C. § 523(a)(4).

45. As a direct and proximate cause of Debtor's conduct, Mulligan and Elite have suffered damages in an amount not less than $290,000.00 with the exact amount to be proven at trial.

46. Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs incurred and expended herein together with interest accruing at the highest rate allowed by law.

WHEREFORE, Plaintiffs pray for judgment against Jonathan Koop, as follows:

A. That the Court decree that Debtor is indebted to Plaintiffs and that such indebtedness is non-dischargeable pursuant to 11 U.S.C. § 523(a)(4);

B. For judgment in favor of Mulligan and Elite in the total sum of not less than Two Hundred Ninety Thousand and 00/100 Dollars ($290,000.00), together with interest and taxable costs;

C. That the Court award Mulligan and Elite their reasonable attorneys' fees and costs; and

D. For such other and further relief as this Court deems just and proper.

/ / /

/ / /

## COUNT THREE

### (Violation of 11 U.S.C. § 523(a)(6))

47. Plaintiffs incorporate herein by reference all of the allegations contained in this Complaint as though fully set forth herein.

48. Debtor is indebted to Mulligan and Elite as a result of his willful and malicious injury to Mulligan and Elite and their property pursuant to 11 U.S.C. § 523(a)(6).

49. As a direct and proximate cause of Debtor's conduct, Mulligan and Elite have suffered damages in an amount not less than $290,000.00 with the exact amount to be proven at trial.

50. Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs incurred and expended herein together with interest accruing at the highest rate allowed by law.

WHEREFORE, Plaintiffs pray for judgment against Jonathan Koop, as follows:

A. That the Court decree that Debtor is indebted to Plaintiffs and that such indebtedness is non-dischargeable pursuant to 11 U.S.C. § 523(a)(6);

B. For judgment in favor of Mulligan and Elite in the total sum of not less than Two Hundred Ninety Thousand and 00/100 Dollars ($290,000.00), together with interest and taxable costs;

C. That the Court award Mulligan and Elite their reasonable attorneys' fees and costs; and

/ / /

/ / /

/ / /

/ / /

1     D.    For such other and further relief as this Court deems just and proper.

2     DATED this 22nd day of February, 2019.

3                         JENNINGS, HAUG & CUNNINGHAM, L.L.P.

5                         /s/ Matthew H. Sloan (#018632)
                          Matthew H. Sloan
6                         Attorneys for Shawn Mulligan and
                          Elite Enterprise Services, LLC

6795-0/3612495